PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JOHNNY E. JAMES JR. (SCBN 101260)
Special Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5081
    johnny.james@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>SERGIO CASPER CONTRERAS,<br><br>    Defendant. | **CASE NOS. 5:11-CR-00876; 5:24-CR-00127 EJD**<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

## I. Introduction

Defendant Sergio Casper Contreras is a repeat offender of federal laws prohibiting the possession of, enticement to, and distribution of child sex abuse material ("CSAM"). While Contreras was on lifetime supervised release from his prior federal conviction for distributing CSAM, the United States Probation Office searched his home, found an unauthorized laptop computer, and discovered that not only had Contreras again procured more than a hundred CSAM images and videos, but he had also enticed teenage boys to perform sexual acts on live video through the online chat platform Omegle. While Contreras' criminal history is limited, both the present and past offenses involve admissions to specific criminal contact with minors. Accordingly, the United States recommends the Court impose a total sentence of 210 months of imprisonment.

## II.    Facts & Procedural History

The presentence report contains an accurate description of the background facts and the offense conduct that resulted in the indictment against Contreras. As such, this memorandum primarily endeavors to synthesize a summary of those facts with a summary of pertinent facts from the presentence investigation report from his previous conviction.

### A.    Contreras was convicted for possession of child pornography in 2012, admitted to prior uncharged molestation of minors, and sentenced to 87 months of incarceration and a lifetime of supervised release.

On or about June 4, 2012, Contreras appeared before this Court and pled guilty to one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2). 11-CR-876 ECF Nos. 19, 20. Pursuant to a Rule 11(c)(1)(C) plea agreement between Contreras and the United States, Contreras admitted knowingly and intentionally sending numerous images of child pornography to another individual on various dates in 2011, and to possessing over 600 images and videos of child pornography on his computer and portable digital media. 11-CR-876 ECF No. 20 at 2-3. Contreras additionally admitted that he had previously molested no less than three children, for which he was never charged: two unnamed neighborhood boys in the Los Angeles area aged approximately five- to seven-years-old in 1993 or 1994 (Contreras then himself a minor aged 16 to 17 years old), and a nine- or ten-year-old boy he had babysat around 2008. 11-CR-876 ECF Nos. 27-30; 24-CR-127 ECF No. 26 at 13-14. Contreras was ultimately held responsible for his possession of 5,572 images and 45 videos constituting CSAM. 11-CR-876 ECF Nos. 27-30.

On October 29, 2012, Contreras appeared before this Court and was sentenced to 87 months of incarceration in the Federal Bureau of Prisons, a lifetime term of supervised release, a $100 special assessment, and no fine. 11-CR-876 ECF Nos. 31-32. The Court imposed numerous conditions of supervised release, which included, among others:

- The mandatory condition that Contreras "shall not commit another federal, state or local crime."

- Special Condition #4, which provided that Contreras "shall only possess such computers or peripheral equipment as approved by the probation officer."

- Special Condition #7, which provided that Contreras "shall not possess any materials, including pictures, photographs, books, writings, drawings, videos, or video games, depicting and/or

U.S. Sentencing Memorandum                              2
5:11-CR-00876; 5:24-CR-00127 EJD

- describing child pornography, as defined in 18 U.S.C. § 2256(8)."
- Special Condition #9, which provided that Contreras "shall not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18, except" in the presence of the parent or legal guardian informed of Contreras' conviction.

11-CR-876 ECF No. 32 at 3-5. Contreras was promptly remanded to the custody of the U.S. Marshal and began serving his custodial sentence. *Id.* at 2. Contreras completed that custodial sentence and commenced his term of supervised release on March 9, 2018. 11-CR-876 ECF No. 38 at 1.

    **B.**    **Beginning no later than March 2021, Contreras used the website Omegle to entice a 14-year-old boy into exposing himself while masturbating on a video chat, and recorded a video of the exchange.**

On or about March 30, 2021, Contreras—stressed and depressed by work and a sense of isolation—accessed the website Omegle.com. 24-CR-127 ECF No. 6 at 4; 24-CR-127 ECF No. 26 at 8. Omegle was[1] a free online chat website which pitched itself as a means of engaging in random text and video chats with strangers. Through Omegle, Contreras was paired in a chat with a 14-year-old boy ("Victim-1"). Victim-1 appeared on video camera but Contreras kept his camera turned off so as to conceal his true appearance. 24-CR-127 ECF No. 6 at 4. Contreras represented himself to be a 20-year-old female and encouraged Victim-1's resultant offer to masturbate together. *Id.* Victim-1 removed his pants, aimed his camera at his crotch, and began to masturbate beneath his underwear. *Id.* Victim-1 repeatedly asked to see the 20-year-old woman he thought he was paired with, but instead Contreras instructed Victim-1 to expose his genitalia; Victim-1 ultimately complied and exposed his genitalia while continuing to masturbate. *Id.* at 4-5. Victim-1 again asked his chat partner to show him "her" breasts, but Contreras feigned turning on his camera. *Id.* at 5. Victim-1 noted that he still could not see anything and suggested they use a different app; Contreras responded "K going to snap" and the conversation ended. *Id.* The Omegle chat lasted about 23 minutes and 56 seconds. *Id.* Contreras saved a recording of the Omegle exchange on his phone. *Id.*

---

[1] Upon information and belief, Omegle ceased operations in late 2023, purportedly due in part to the settlement a civil lawsuit by a victim of child sex exploitation through the website. *See* Joe Tidy, *Omegle: 'How I got the dangerous chat site closed down'*, BBC, Nov. 21, 2023, https://www.bbc.com/news/technology-67485561; *Omegle*, Wikipedia (Mar. 11, 2025, 2:58 PM PDT), https://en.wikipedia.org/wiki/Omegle.

Contreras also had other chats with boys on Omegle ranging in stated ages from 14 to 17 years old. The minor boys appeared to be both prepubescent and postpubescent. 24-CR-127 ECF No. 26 at 7.

### C. In April 2022, Contreras failed a polygraph examination, which prompted him to admit possession of an unauthorized smartphone, and led to a search of his residence and vehicle, which revealed he possessed CSAM.

On April 6, 2022, Contreras was subject to an examination, after which he disclosed to the examiner that he possessed an unauthorized smartphone. Consequently, United States Probation Officers instructed Contreras to meet in a parking lot in Sunnyvale, California. There, Contreras admitted he had possessed the unauthorized phone for about a week and had accessed websites he should not have. Contreras disclosed his phone's password and explained that he had obtained the phone to cope with stress caused by work and social isolation. USPO advised Contreras to drive safely home and there remain in his car.

United States Probation Officers conducted a search of Contreras' vehicle and residence pursuant to the terms of his supervised release. 24-CR-127 ECF No. 26 at 4. During the search, USPO found an unauthorized Motorola Moto G7 Smartphone in Contreras' vehicle, and an unauthorized Acer Chromebook in his bedroom, among other irrelevant items. *Id.* at 5. Contreras disclosed the password for his Acer Chromebook.

Pursuant to a federal search warrant, FBI S/A Colleen Dettling conducted a manual examination of both the Acer Chromebook and Motorola phone. *Id.* at 5-6. No CSAM was found on the Acer Chromebook; rather, the device contained multiple documents authored by Contreras expressing considerable shame, regret, depression, and remorse from his previous conduct and conviction. *Id.* at 6. One document, a letter addressed to a victim, apologized for sexually victimizing that person. *Id.* Another document, a letter addressed to Contreras' mother, apologized for his actions and sought reconciliation.

As for the Motorola phone, and the Axiom report of its contents, law enforcement identified 93 CSAM images and 28 CSAM videos, of which eight depicted Contreras' production thereof. *Id.* at 6-7. The minors depicted in the CSAM were males who ranged in age from 14 to 17 years old. *Id.* None of the victims depicted were identified by the National Center for Missing and Exploited Children (NCMEC). *Id.* at 7. Investigators also found the video of Contreras' chat with Victim-1. *Id.*

The United States charged Contreras by information filed February 28, 2024, for two counts of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2).  24-CR-127 ECF No. 1. Contreras promptly pled guilty on March 25, 2024.  24-CR-127 ECF Nos. 6, 26 at 4.

### III.   Proposed Disposition & Argument

Contreras admitted offense conduct and attendant circumstances present both severe aggravating factors and compelling mitigating factors.  That Contreras has a prior federal conviction involving child pornography, has admitted to previously molesting minors, and has again sexually exploited minors beyond simple possession of CSAM all present ample justification for a sentence within the guidelines agreed to by the United States and Contreras.  However, that Contreras immediately confessed his guilt when confronted, immediately assisted investigators, immediately explained what compelled him to again violate the law, and credibly expresses remorse and regret for his actions all combine to provide that the Court should not impose a sentence any higher than the guidelines agreed to by the United States and Contreras.  Accordingly, the United States recommends the Court impose a sentence at the bottom of the guidelines agreed to by the United States and Contreras:  <u>210 months</u>.

#### A.   Legal Standard

"From the beginning of the Republic, federal judges were entrusted with wide sentencing discretion."  *Conception v. United States*, 597 U.S. 481, 490 (2022) (quotation omitted).  "Federal courts historically have exercised this broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them."  *Id.* at 491; *see also Dean v. United States*, 581 U.S. 62, 66 (2017) (citing *Pepper v. United States*, 562 U.S. 476, 487-89 (2011)) ("Sentencing courts have long enjoyed discretion in the sort of information they may consider when setting an appropriate sentence.").  In setting an appropriate sentence consistent with statutory directives, the Court must "'impose a sentence sufficient, but not greater than necessary, to comply with' the four identified purposes of sentencing:  just punishment, deterrence, protection of the public, and rehabilitation."  *Id.* at 67 (quoting 18 U.S.C. § 3553(a)).

Procedurally, "the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual in light of the statutory sentencing factors, . . . explaining

any variance from the former with reference to the latter." *Nelson v. United States*, 555 U.S. 350, 351 (2009).

### B.   Sentences Available and Guidelines - Sections 3553(a)(3), (4), & (5)

Following the *Nelson* order of operations, we first consider the possible sentences and the sentencing guidelines. All parties agree as to the minimum and maximum potential penalties which may be imposed for the offenses to which Contreras pled guilty. The United States and Contreras agree as to the applicable calculations under the United States Sentencing Guidelines, but the United States Probation Office reaches a divergent conclusion.

As to Count One, a violation of 18 U.S.C. § 2422(b) as alleged in this case carries the following potential penalties:

| **Count One** | Minimum | Maximum | Statute |
|---|---|---|---|
| Incarceration | 10 Years | Life | 18 U.S.C. § 2422(b) |
| Supervised Release | 5 Years | Life | 18 U.S.C. § 3583(k) |
| Fine | $0.00 | $250,000.00 | 18 U.S.C. § 3571(b)(3) |
| Special Assessment | $100.00 per Count | | 18 U.S.C. § 3013(a)(2)(A) |
| Forfeiture | Mandatory | | 18 U.S.C. § 2428 |
| Restitution | Mandatory | | 18 U.S.C. § 2429 |
| Deportation | Possible | | 8 U.S.C. § 1227(a)(2) |

As to Count Three, a violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) as alleged in this case carries the following potential penalties:

| **Count Three** | Minimum | Maximum | Statute |
|---|---|---|---|
| Incarceration | 10 Years | 20 Years | 18 U.S.C. § 2252(b)(2) |
| Supervised Release | 5 Years | Life | 18 U.S.C. § 3583(k) |
| Fine | $0.00 | $250,000.00 | 18 U.S.C. § 3571(b)(3) |
| Special Assessment | $100.00 per Count | | 18 U.S.C. § 3013(a)(2)(A) |
| Forfeiture | Mandatory | | 18 U.S.C. § 2253 |
| Restitution | Mandatory, no less than $3,000 per victim | | 18 U.S.C. § 2259 |
| Deportation | Possible | | 8 U.S.C. § 1227(a)(2) |

The United States and Contreras agree that the Sentencing Guidelines offense level should be calculated under U.S.S.G. § 2G1.3, as set forth in the plea agreement, and group the multiple counts together as the same general type under these very specific facts. ECF No. 6 at 7; *see also* U.S.S.G. § 3D1.2 cmt. 6 ("The 'same general type' of offense is to be construed broadly."). Because Contreras pled guilty to 18 U.S.C. § 2422(b), the base offense level is 28. U.S.S.G § 2G1.3(a)(3). As set forth in the facts above, Contreras misrepresented his identity and characteristics to entice his victim, and so is subject to a two-level increase. U.S.S.G. § 2G1.3(b)(2)(A). Furthermore, Contreras used a computer and an interactive computer service to entice his victim, and so is subject to an additional two-level increase. U.S.S.G. § 2G1.3(b)(3)(A). Still further, Contreras enticed the victim into the commission of a sex act, and so is subject to another two-level increase. U.S.S.G. § 2G1.3(b)(4)(A). Thus, the adjusted offense level subtotal is 34.

However, because Contreras committed the instant offense after a pattern of activity involving prohibited sexual conduct, the final total offense level is subject to an additional five-level enhancement. U.S.S.G. § 4B1.5. Finally, the parties agree that Contreras has forthrightly admitted his guilt, cooperated with the Court and the Probation Office, and continues to manifest an acceptance of responsibility to this point, and such that a three-point reduction is likely appropriate. U.S.S.G. § 3E1.1. These adjustments result in a total offense level of 36, which is the highest of the two offenses in the group.

The United States Probation Office reaches a different conclusion, applies U.S.S.G. § 2G2.1 to Count One, and does not group the offenses. The United States in its discretion did not charge Contreras with the production of child pornography. The United States respectfully requests the Court apply the sentencing guidelines as agreed to by the United States and Contreras.

The parties reached no agreement as to Contreras' Criminal History Category. 24-CR-127 ECF No. 6 at 7. The United States has reviewed the presentence report analysis of Contreras' criminal history and is in agreement that Contreras' criminal history score is three and attendant criminal history category is II. 24-CR-127 ECF No. 26 at 12-13.

Accordingly, the United States advises the Court to apply to Contreras an offense level of 36 and criminal history category of II. The attendant guidelines range is therefore 210 to 262 months. U.S.S.G.

§ 5A. Because Contreras' guideline range is in Zone D of the sentencing table, the minimum term should be satisfied by a sentence of imprisonment, and not by any substitute. U.S.S.G. § 5C1.1(f)

### C.  Application of Section 3553(a) Factors

The facts of Contreras' offense conduct are generally straightforward. Consequently, the application of the factors set forth in 18 U.S.C. § 3553(a) is similarly straightforward, if subject to a considerable range of interpretation and judicial discretion.

#### 1.  The Nature and Circumstances of the Offense - Section 3553(a)(1)

Offenses involving the sexual exploitation of minors, especially in the context of pornography, are particularly severe and, accordingly, are subject to severe penalty. Children do not characteristically have countenances inviting sexual activity, but an innocent child can be coaxed to assumed poses or expressions that bespeak sexual availability when viewed by certain adults. *See United States v. Overton*, 573 F.3d 679, 688-89 (9th Cir. 2009) (citations omitted) (stating as much in context of *Dost* factor analysis). The heart of the crime is the offense against the child—the harm to the physiological, emotional, and mental health of the child; the psychological harm; the invasion of the child's vulnerability." *Id.* "Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place." *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982) (citing Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981)).

In this case, Contreras' offense conduct triggers some, but not all of the factors by which one might identify the most serious child sex exploitation. Contreras victimized a particular child by enticing him to perform sexual acts on camera. Contreras did so while in the textual guise of a woman closer to the victim's age. Without Victim-1's knowledge, Contreras recorded the exchange for future use. These actions provide for profound damage to the victim's psyche and well-being for many years to come.

On the other hand, the United States can offer no evidence that Contreras in turn distributed his recordings to third-parties, and so long as such recordings do not appear in the future, Contreras' non-distribution may prove to limit the scope of the victim's long-term injury. Additionally, Contreras was

*immediately* cooperative with investigators, disclosed his unauthorized devices, and provided the means by which investigators could access and review them. Contreras' cooperation with probation officers is a very significant factor which reflects his own remorse for his wrongdoing, and merits acknowledgment in crafting and appropriate sentence.

Altogether, the application of this factor serves to support a severe, but not the most severe penalty which the Court may impose.

### 2.     The History and Characteristics of the Defendant - Section 3553(a)(1)

Contreras' history and characteristics present both aggravating and mitigating factors. The United States will not restate in full Contreras' personal history and characteristics, which are thoroughly explored in the presentence report.

Contreras' prior conviction is a particularly severe aggravating aspect of his history, as are his admitted prior acts of molestation which did not result in a conviction. Contreras' history is one of freshly exploiting children. Despite his prior conviction, extended incarceration, and the firm hand of supervised release, he again reoffended, and newly victimized minors.

On the other hand, Contreras' upbringing of physical and sexual abuse by his father and uncles, implicitly condoned by his mother, provides a clear and tragic explanation for the predilection on which he acted. *See Kennedy v. Louisiana*, 554 U.S. 407, 468-69 (2008) (Alito, J., dissenting) ("Commentators have noted correlations between childhood sexual abuse and later problems such as substance abuse, dangerous sexual behaviors or dysfunction, inability to relate to others on an interpersonal level, and psychiatric illness. . . . Victims of child rape are nearly 5 times more likely than nonvictims to be arrested for sex crimes and nearly 30 times more likely to be arrested for prostitution."). In this regard, Contreras is a textbook example of how abuse begets abuse, and he may yet benefit from potential avenues of rehabilitation—while serving a long custodial sentence.

Altogether, the application of this factor serves to support a severe, but not the most severe penalty which the Court may impose.

### 3.     Punishment, Deterrence, Incapacitation, Rehabilitation - Section 3553(a)(2)

The need to punish those who sexually exploit children, deter others from doing so, protect the public from those who do so, and rehabilitate those who are willing to be rehabilitated is extremely high.

1    As to punishment, the dissent by Justice Alito in *Kennedy*, *supra*, presents a forceful summary of
2 the innumerable harms which are imposed on society by child sex abuse, which need not be restated in
3 full here. *Id.* at 467-69. Given the severity of the harms incurred to the victims, and thereafter to society
4 writ large, the United States has a strong interest in seeking a severe punishment for Contreras' conduct.

5    As to incapacitation and rehabilitation, statistically, "[c]ompared to non-sex offenders released
6 from State prisons, released sex offenders were 4 times more likely to be rearrested for a sex crime."
7 Patrick A. Langhan, et. al., U.S. Dep't of Justice, *Recidivism of Sex Offenders Released from Prison in*
8 *1994* at 1 (Nov. 2003); *but see id.* at 1-2 (also acknowledging lower rate of recidivism by released sex
9 offenders of non-sex crimes); *United States v. Keobdeaux*, 570 U.S. 387, 395-96 (2013) (citing same,
10 but acknowledging conflicting evidence on the point). "Older offenders [are] substantially less likely
11 than younger offenders to recidivate following release." U.S. Sentencing Comm'n, *The Effects of Aging*
12 *on Recidivism Among Federal Offenders* at 2, https://www.ussc.gov/sites/default/files/pdf/research-and-
13 publications/research-publications/2017/20171207_Recidivism-Age.pdf (Dec. 2017) (last visited Mar.
14 17, 2025). Indeed, federal offenders released after the age of 60 have a vanishingly low rate of
15 recidivism. *See Id.* at 11 (Fig. 1, demonstrating decline in arrests and particularly low figures for
16 defendants aged 60 and older).

17    Here, Contreras has demonstrated that his previous punishment was insufficient to deter him
18 from reoffending, and that there remains a significant need to protect the public from him until such time
19 as he might be more successfully rehabilitated, or at least until he ages to a point that the cooling effect
20 of age on one's passions reduces the likelihood of reoffending. As Contreras is aged 48, a significant,
21 but not the most severe sentence should be sufficient to address the public need for punishment to be
22 imposed, and to protect the public until such time as Contreras may be rehabilitated and grow to an age
23 where he is less likely to reoffend.

24          **4.      Comparative Data – Section 3553(a)(6)**

25    The presentence report provides some comparative data, but it does so in the context of its
26 application of sentencing guidelines which diverge from those agreed to by the United States and
27 Contreras. As previously noted, the United States asks the Court to apply U.S.S.G. § 2G1.3 and an
28 offense level of 36—consistent with the plea agreement—and a criminal history category of II.

In this context, during the five fiscal years provided by the Judiciary Sentencing Information (JSIN) platform (FY2019-2023), there were six defendants whose primary guidelines were as above. All six received a sentence of imprisonment. The average length of imprisonment imposed was 174 months and the median sentence imposed was 165 months.

The United States recommends that Contreras receive a sentence more severe than the average and median sentences imposed for similarly situated defendants, but the comparative data discourages a recommendation of a maximally severe sentence.

### 5.     Restitution - Section 3553(a)(7)

As set forth in the presentence report, only one victim was successfully identified in the course of this investigation, and that victim has not submitted any victim impact information or particularized request for restitution. Nor was NCMEC able to identify any of the victims in the CSAM recovered from Contreras. Accordingly, the United States has received no specific requests for restitution.

Nonetheless, because Contreras recorded his exchange with Victim-1, and that recording can be properly considered as a contributing part of his plea to Count Three, the mandatory minimum restitution of $3,000.00 must be imposed to the benefit of Victim-1. *See* 18 U.S.C. § 2259(b)(2)(B) (providing for mandatory minimum restitution for violations of Title 18, Chapter 110). The United States requests the Court order Contreras pay restitution in the amount of $3,000.00.

### D.     Recommended Sentence

For all of the reasons forgoing, and pursuant to the plea agreement filed March 25, 2024, the United States recommends the Court sentence Contreras to imprisonment in the custody of the Federal Bureau of Prisons for concurrent terms of 210 months each for Count One and Count Three of the information captioned 5:24-cr-00127-EJD, to run concurrent to a revocation of supervised release in 5:11-cr-00876-EJD. *See* 24-cr-127 ECF No. 6 at 10 (U.S. agreement to so recommend). The United States does not recommend the imposition of any fine, in light of Contreras impecunious financial condition and the greater need for restitution for the victims. The United States recommends the Court further sentence Contreras to a life term of supervised release, consistent with his previous sentence of lifetime supervised release in 5:11-cr-00876-EJD, and consistent with the conditions recommended in the presentence report. Finally, the United States recommends the Court impose a total special

assessment of $200.00: $100.00 for each of the two counts to which Contreras pled guilty. For the same reason as the fine, any additional assessments which may be provided for by law should be waived.

It is the recommendation of the United States that such a sentence is sufficient, but not greater than necessary, to address the requirements of 18 U.S.C. § 3553. Any seeming disparity between such a sentence and the JSIN data provided is justified by the fact that Contreras is a federal recidivist sex offender.

As to restitution, the United States requests the Court order restitution in the amount of $3,000.00 to Victim-1, the minimum required by law.

## IV. Conclusion

The United States recommends a concurrent, total sentence of 210 months, the bottom of the guidelines to which the United States and Contreras agreed, no fine, lifetime supervised release, and the minimal special assessment, for all the reasons set forth above. The United States will move to dismiss Count 2 of the information at the conclusion of the sentencing proceedings.

DATED: March 17, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

*Johnny E. James Jr.*
JOHNNY E. JAMES JR.
Special Assistant United States Attorney